## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RICHARD COWLES,                    )
                                   )
              Plaintiff,           )
                                   )
      v.                           )          1:15CV105
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner                )
of Social Security,                )
                                   )
              Defendant.           )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Richard Cowles, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 9, 11). For the reasons that follow, the Court should enter judgment for Defendant.

## PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of January 6, 2012. (Tr. 186-90.) Upon denial of that application initially (Tr. 91-101, 121-29) and on reconsideration (Tr. 102-14, 115-16, 131-38), Plaintiff requested a hearing de novo before an

Administrative Law Judge ("ALJ") (Tr. 130). Plaintiff, his non-attorney representative, and a vocational expert ("VE") attended the hearing. (Tr. 53-80.) The ALJ then ruled Plaintiff not disabled within the meaning of the Act. (Tr. 40-49.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision for purposes of judicial review. (Tr. 4-8.)

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2015.

2. [Plaintiff] has not engaged in substantial gainful activity since January 6, 2012, the alleged onset date.

3. [Plaintiff] has the following severe impairments: HIV+, degenerative disc disease (DDD), and degenerative joint disease.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to lift and carry up to 25 pounds frequently and 50 pounds occasionally, and to stand and walk for up to six hours in an eight-hour work day, and to sit for up to six hours in an eight-hour workday. [Plaintiff] could occasionally climb, stoop, and crouch. [Plaintiff] would not have any acute depth perception.

. . .

2

6.   [Plaintiff] is capable of performing past relevant work as a deli counter/sandwich maker and an estimator. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

7.   [Plaintiff] has not been under a disability, as defined in the . . . [Act], from January 6, 2012, through the date of this decision.

(Tr. 45-49 (internal citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). In this case, Plaintiff has not shown entitlement to relief under the extremely limited review standard.

### A.   Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).   "Substantial evidence means 'such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI) . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

specified impairments, or is otherwise incapacitating to the extent
that the claimant does not possess the residual functional capacity
to (4) perform [the claimant's] past work or (5) any other work."
Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2
(4th Cir. 1999).[2]  A finding adverse to the claimant at any of
several points in the SEP forecloses an award and ends the inquiry.
For example, "[t]he first step determines whether the claimant is
engaged in 'substantial gainful activity.' If the claimant is
working, benefits are denied.  The second step determines if the
claimant is 'severely' disabled.  If not, benefits are denied."
Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at
each of the first three steps, the "claimant is disabled." Mastro,
270 F.3d at 177.  Alternatively, if a claimant clears steps one and
two, but falters at step three, *i.e.*, "[i]f a claimant's impairment
is not sufficiently severe to equal or exceed a listed impairment,
the ALJ must assess the claimant's residual functional capacity
('RFC')." Id. at 179.[3]  Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the
claimant.  If the claimant reaches step five, the burden shifts to the
[Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the
claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative
regulations require RFC to reflect claimant's "ability to do sustained work-
related physical and mental activities in a work setting on a regular and
continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an
equivalent work schedule" (internal emphasis and quotation marks omitted)).  The
RFC includes both a "physical exertional or strength limitation" that assesses
the claimant's "ability to do sedentary, light, medium, heavy, or very heavy
                                                              (continued...)

6

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "[t]he ALJ erred by failing to consider the applicability of Listing 14.08H for HIV" (Docket Entry 10 at 4);

---

[3](...continued)
work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

(2) the ALJ erred in his determination of the RFC in that he a) "fail[ed] to perform a function by function assessment" (id. at 8); b) failed to properly evaluate certain evidence (id. at 8-10, 12-13); and c) improperly evaluated Plaintiff's credibility (id. at 11-12)

(3) "[t]he ALJ erred by finding that Plaintiff could perform the job of estimator" (id. at 13).

Defendant contends otherwise and urges that substantial evidence supports the finding of no disability. (Docket Entry 12 at 3-20.)

## 1. Listing 14.08H

In Plaintiff's first issue on review, he maintains that the ALJ erred by "not consider[ing] the applicability of Listing 14.08H" governing "HIV wasting syndrome," in light of Plaintiff's "diagnosis of HIV, his testimony and complaints to medical providers regarding fatigue and bowel problems and his documented weight loss." (Docket Entry 10 at 6.) In support of this argument, Plaintiff points to findings in the medical record that he alleges demonstrate involuntary weight loss of "more than 10 percent of his already low baseline body weight" (id. (citing Tr. 269-70, 272-77, 279)), and ongoing bowel problems (id. (citing Tr. 274, 300), sufficient to meet the criteria of Listing 14.08H. Plaintiff further cites Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013), for the proposition that "an ALJ cannot summarily conclude

8

that a claimant does not meet a listing because such 'insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings.'" (Docket Entry 10 at 6 (citing Radford, 734 F.3d at 295).) Plaintiff's arguments lack merit.

As relevant to the instant case,[5] Listing 14.08H requires proof of "involuntary weight loss of 10 percent or more of baseline . . . in the absence of a concurrent illness that could explain the findings" and "[c]hronic diarrhea with two or more loose stools daily lasting for 1 month or longer." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.08H. To show that his condition meets a listed impairment, Plaintiff must establish that his impairment "meet[s] all of the specified medical criteria" that relate to such listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Here, the ALJ's entire step three finding consists of the following:

> The undersigned finds that these impairments, singly or in combination, based upon a review of the medical evidence, do not meet listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment.

---

[5] Plaintiff does not argue that his HIV infection has caused "[c]hronic weakness and documented fever greater than 38 [degrees Celsius] (100.4 [degrees Fahrenheit]) for the majority of 1 month or longer," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.08H.2. (See Docket Entry 10 at 4-8.)

9

(Tr. 45.) The ALJ arguably should have discussed Listing 14.08H due to Plaintiff's documented status as HIV positive (see Tr. 279), his complaints of bowel problems (see Tr. 274, 300), and the numerous references to Plaintiff's weight loss in the record (see Tr. 272-75, 277-78). See Huntington v. Apfel, 101 F. Supp. 2d 384, 390 (D. Md. 2000)("[A]n ALJ must fully analyze whether a claimant's impairment meets or equals a listing where there is factual support that a listing could be met." (citing Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986))); see also Radford, 734 F.3d at 295 (holding that "insufficient legal analysis [at step three] makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings" (citing Cook, 783 F.2d at 1173)).

However, any such failure on the ALJ's part amounts to harmless error, because the record convincingly establishes that Plaintiff's HIV infection did not meet the criteria of Listing 14.08H. Even assuming, arguendo, that the transcript pages cited by Plaintiff contain the objective medical findings required by Listing 14.08H,[6] Plaintiff glosses over the fact that these

_____

[6] Indeed, significant doubt exists as to whether Plaintiff has shown "[c]hronic diarrhea with two or more loose stools daily lasting for 1 month or longer" as required by Listing 14.08H. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.08H.1. Plaintiff's reliance on a January 20, 2011 report to his treating physician of "loosening of his stools . . . over the past 3-4 weeks" (Tr. 274) does not suffice primarily because such report occurred nearly a year prior to his onset date, with no further reports of diarrhea or loose stools to that physician in the record (see Tr. 269-73, 321-30). Moreover, that report lacks any indication Plaintiff experienced two loose stools per day (see Tr. 274), as
(continued...)

findings must have occurred _after_ his onset date of January 6, 2012, in order to qualify as disabling.  See <u>Alston v. Colvin</u>, No. 14-cv-0244(JS), 2015 WL 5178158, at *9 (E.D.N.Y. Sept. 3, 2015) (unpublished) (upholding ALJ's finding that the plaintiff did not meet Listing 14.08H where no evidence existed the plaintiff had symptoms of HIV wasting syndrome "<u>during the relevant disability period</u>" (emphasis added)).  Here, _all_ of Plaintiff's weight loss of record occurred between April 1, 2010 (<u>see</u> Tr. 279 (reflecting weight of 77.6 kilograms or 171 pounds)), and July 14, 2011 (<u>see</u> Tr. 272 (indicating weight of 69.7 kilograms or 154 pounds)), well prior to his onset date.  Indeed, beginning in November 2011 and continuing through the last medical evidence of record in February 2013, Plaintiff's weight either increased slightly or remained approximately the same.  (<u>See</u> Tr. 270 (November 10, 2011 – 70.8 kilograms or 155 pounds), 302 (April 21, 2012 – 156.4 pounds), 329 (April 26, 2012 – 70.7 kg or 155.5 pounds), 326 (August 9, 2012 – 70.9 kilograms or 156 pounds), 322 (February 15, 2013 – 71.6 kilograms or 158 pounds).)  Under such circumstances, the ALJ's failure to explicitly discuss Listing 14.08H constitutes harmless error.  See <u>Gower v. Commissioner of Soc. Sec.</u>, Civ. No. 13-14511,

---

[6](...continued)
required by Listing 14.08H.1, <u>see</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.08H.1.  Plaintiff's April 21, 2012 report of "occasional bowel problems" to a consultative examiner (Tr. 300) also falls far short of establishing either "[c]hronic diarrhea" or a duration of "1 month or longer," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.08H.1.

2015 WL 163830, at *29 (E.D. Mich. Jan. 13, 2015) (unpublished) (deeming harmless ALJ's failure to elaborate why claimant's impairment did not meeting listing where "[a]ny further discussion would simply expound upon the absence of evidence"); see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

In sum, Plaintiff's first assignment of error fails to entitle him to relief.

## 2. Residual Functional Capacity

Next, Plaintiff contends that the ALJ erred in determining Plaintiff's RFC in three respects. (See Docket Entry 10 at 8-13.) First, Plaintiff alleges that the ALJ violated Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), by failing to complete a function-by-function assessment of Plaintiff's ability to perform work-related activities. (See Docket Entry 10 at 10-11 (citing Mascio, 780 F.3d at 636).) Second, Plaintiff asserts that the ALJ improperly credited the opinions of Dr. A.K. Goel, a non-examining state agency physician, over the opinions of consultative examiner Dr. Lydia Vognar and treating physician Dr. Christopher B. Hurt, and entirely disregarded a statement from Plaintiff's former employer, James Steward. (See id. at 8-9, 10, 12-13.) According to

12

Plaintiff, the evidence from Drs. Vognar and Hurt and Mr. Steward established that Plaintiff could only perform a "reduced range of sedentary or light work." (Id. at 9.)  Third, Plaintiff faults the ALJ for finding that Plaintiff "was generally not credible with the same sort of boilerplate credibility attack . . . which the Fourth Circuit has denounced." (Id. at 12 (citing Tr. 46, and Mascio, 790 F.3d at 639).)  Plaintiff's contentions fall short.

Plaintiff first asserts that under Mascio, prejudicial error arises "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record." (Id. at 11 (citing Mascio, 780 F.3d at 636).)  According to Plaintiff, the ALJ "stated in a conclusory fashion" that Plaintiff could lift 50 pounds and "stand and walk for [six] hours in an [eight-]hour workday without additional breaks," without "perform[ing] a function by function analysis of these contested functions with a narrative discussion of how he resolved the evidentiary conflicts" presented by Plaintiff's testimony and the opinions of Drs. Vognar and Hurt. (Id. at 11-12 (citing Tr. 45, 63-67, 258, 267).)

The ALJ here adequately explained his reasoning for adopting the RFC.  As the Commissioner argues (see Docket Entry 12 at 12), the ALJ gave "significant weight" to the opinions of state agency consultant Dr. Goel (Tr. 48), who opined that Plaintiff could lift up to 25 pounds frequently and up to 50 pounds occasionally (medium

work, see 20 C.F.R. § 404.1567(c)); sit, stand, and walk for six hours in an eight-hour workday; occasionally climb, stoop, and crouch; frequently kneel and crawl; and should avoid significant depth perception (Tr. 110-12). Dr. Goel's RFC assessment provides substantial evidence to support the ALJ's RFC.

Plaintiff nevertheless takes issue with the ALJ's reliance on Dr. Goel's opinions "without citation to evidence on record explaining his finding" (Docket Entry 10 at 9), and notes that state agency consultants, as non-examining physicians, typically warrant less weight than treating and examining physicians such as Drs. Hurt and Vognar (id. at 9-10 (citing Radford, 734 F.3d at 295)). However, the mere fact that Dr. Goel did not examine Plaintiff does not preclude the ALJ from relying on Dr. Goel's opinons. See Bryant v. Astrue, No. 3:08CV719, 2009 WL 6093969, at *9 & n.11 (E.D. Va. Jul. 15, 2009) (unpublished) (affirming ALJ's decision to give non-examining state agency consultant's assessment great weight as "consistent with the actual medical findings and conservative treatment of the claimant's treating physicians, and with [the claimant's] admitted activities of daily living" even though such consultants "did not have the opportunity to observe the claimant").

Moreover, the ALJ explained that he gave "significant weight" to Dr. Goel's opinions because he found such opinions "consistent with the objective findings and treatment reports" and noted that

14

"evidence received at the hearing level including testimony and updated records supports these exertional limitations." (Tr. 48.) The ALJ elsewhere in the decision detailed Plaintiff's testimony and the objective findings in the medical evidence (Tr. 46-48), and no need existed for him to rehash that recitation in his discussion of Dr. Goel's opinions, see McCartney v. Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision"); Kiernan v. Astrue, No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis).

   Plaintiff further contends that Dr. Hurt's opinions warrant "significant, if not controlling weight" due to Dr. Hurt's specialization in infectious diseases, the duration and frequency of the treatment relationship, and the consistency and supportability of his opinions. (Docket Entry 10 at 12-13.) On November 1, 2012, Dr. Hurt opined that Plaintiff's HIV-related fatigue caused him to need frequent rest periods and limited Plaintiff to six hours of work per day, less than 10 pounds of

lifting, two to three hours of standing, less than two hours of walking, and five to eight hours of sitting. (Tr. 267.)

The ALJ discussed Dr. Hurt's opinions but gave them "little weight" as unsupported by Dr. Hurt's own examination findings and the other evidence of record. (Tr. 48 (citing Tr. 267-68)); see also 20 C.F.R. § 404.1527(c) ("If [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the ALJ] will give it controlling weight."). Substantial evidence supports the ALJ's decision to discount Dr. Hurt's opinions. Most significantly, Dr. Hurt's records reflect no complaints of fatigue by Plaintiff (see Tr. 269-80, 321-30); rather, as the ALJ observed (see Tr. 47-48), the records indicate that Plaintiff's HIV infection remained largely asymptomatic (see Tr. 269-80, 321-30) and that his T-helper lymphocyte (CD4) levels ranged from 480 to 672 and remained stable (see Tr. 270, 275, 280, 301, 322).[7] Moreover, Dr. Hurt's extreme limitations conflict sharply with the

_____

[7] "Individuals who have HIV infection . . . may have tests showing a reduction of their t-helper lymphocytes (CD4 cells). The extent of immune suppression correlates with the level or rate of decline of the CD4 count. Generally, when the CD4 count is below $200/\text{mm}^3$ (or below 14 percent of the total lymphocyte count) the susceptibility to opportunistic infection is greatly increased." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1400F.b.2.

largely normal findings and mild limitations offered by Dr. Vognar. (<u>Compare</u> Tr. 267-68, <u>with</u> Tr. 300-05.)

Plaintiff also challenges the ALJ's decision to give "significant weight" to Dr. Vognar's opinions (Tr. 47), where Dr. Vognar opined that Plaintif would have difficulty with "prolonged" standing or walking and with "lifting heavy objects" (Tr. 305), yet the ALJ found Plaintiff could lift up to 50 pounds, and stand/walk for up to six hours in an eight-hour workday (Tr. 45). (<u>See</u> Docket Entry 10 at 10.) However, as the ALJ made clear (<u>see</u> Tr. 47), Dr. Vognar clarified the above-described opinions by stating that Plaintiff could "sit and stand <u>normally</u> in an [eight]-hour workday with <u>normal</u> breaks" and that Plaintiff had "<u>mild</u> limitations with prolonged walking . . . [and] with lifting and carrying weight." (Tr. 305 (emphasis added).) Given these clarifications, the ALJ's decision to give Dr. Vognar's opinions "significant weight" (Tr. 47) does not contradict and, in fact, provides additional support for, the RFC determination.

Plaintiff additionally faults the ALJ for not crediting Plaintiff's testimony that "he could not lift more than 16 pounds" (Docket Entry 10 at 11; <u>see also</u> Tr. 65) and "required more than the usual amount of breaks in a workday" (Docket Entry 10 at 12; <u>see also</u> Tr. 66-67) as well as for finding Plaintiff "generally not credible with the same sort of boilerplate credibility attack"

forbidden by <u>Mascio</u> (Docket Entry 10 at 12 (citing <u>Mascio</u>, 780 F.3d at 639)).

Here, the ALJ found Plaintiff's testimony "not entirely credible <u>for the reasons explained in this decision</u>" (Tr. 46 (emphasis added)), which does <u>not</u> constitute the language the <u>Mascio</u> court found "gets things backwards" by implying that the ALJ first determined the RFC and then used the RFC to decide the claimant's credibility, <u>Mascio</u>, 780 F.3d at 639. The ALJ then detailed the reasons why he did not fully credit Plaintiff's statements:

> [Plaintiff] does not have any significant anatomical structural deformities and there is no evidence of ongoing nerve root compression which might be expected based on the degree of pain alleged. Further, [Plaintiff] has not required such aggressive measures for symptom relief as use of steroid medication, epidural injections, application of TENS equipment, or enrollment in physical therapy or a pain management program. [Plaintiff] has required only over-the-counter medication for symptom relief. The treatment regimen, therefore, indicates that [Plaintiff's] symptoms are not as intractable as alleged. In addition, the medical evidence and observations by the [ALJ] do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicate that [Plaintiff's] allegations of functional restrictions are not fully credible.

(Tr. 48.) Substantial evidence supports the ALJ's credibility analysis.

18

Thus, the Court should find that the ALJ adequately explained his reasoning for the RFC, including the weighing of opinion evidence and Plaintiff's credibility, in compliance with Mascio. See Mollett v. Colvin, Civ. No. 2:12-28018, 2015 WL 1481842, at *3 (S.D.W. Va. Mar. 31, 2015) (unpublished) ("While it might be argued that [the ALJ] did not parse and compartmentalize the functional limitation discussion, a reviewer can readily ascertain the ALJ's thinking as it is evident in his discussion of the claimant's testimony and the other evidence of record. Under these circumstances, nothing more is required.").[8]

## 3. Past Relevant Work

Lastly, Plaintiff asserts that the ALJ erred by finding that Plaintiff could return to his past relevant work as an estimator.

---

[8] Plaintiff posits that the ALJ violated Social Security Ruling 06-03p, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939 (Aug. 9, 2006) ("SSR 06-03p"), by "wholly ignor[ing] the statement of Mr. Steward," Plaintiff's former employer. (Docket Entry 10 at 9 (citing Tr. 258).) Mr. Steward submitted a statement indicating that he employed Plaintiff from 2000 to 2001 as an estimator, and that he permitted Plaintiff to take additional breaks to lie down and relieve back pain that Mr. Steward did not afford other employees. (Tr. 258.) Although SSR 06-03p requires the ALJ to "consider all relevant evidence in the case record when [he or she] make[s] a determination or decision about whether the individual is disabled . . . includ[ing] opinion evidence from . . . 'non-medical sources' who have seen the individual in their professional capacity," SSR 06-03p, 2006 WL 2329939, at *4, any failure by the ALJ here to discuss Mr. Steward's statement constitutes harmless error. Mr. Steward last employed Plaintiff in 2001 (see Tr. 258), over 10 years before Plaintiff's alleged onset date of disability. Thus, Mr. Steward's statement lacked any relevance to Plaintiff's functional limitations during the relevant period in this case. To the extent Mr. Steward's statement had any relevance to describe Plaintiff's past relevant work as an estimator as he actually performed that job, for the reasons more fully described in section 3, infra, the ALJ's findings with regard to Plaintiff's ability to perform his prior work as an estimator have no material impact on the ultimate outcome of this case.

(See Docket Entry 10 at 13-14.) In particular, Plaintiff points out that the VE categorized the job of estimator as having a Specific Vocational Preparation ("SVP") of 7 (id. at 14; see also Tr. 75), which means that an employee needs two to four years to learn the job (id. (citing Tr. 77-78)). Plaintiff testified that he only performed the estimator job for one year, and that he "was training" during the whole year and did not finish that training. (Tr. 68.)

The Commissioner concedes that the ALJ erred in finding that Plaintiff could perform his prior job as an estimator (see Docket Entry 12 at 19), but correctly argues that Plaintiff did not "contest the ALJ's finding that Plaintiff would also be capable of performing his past relevant work as a deli counter/sandwich maker" (id. at 20 (citing Tr. 49)). (See Docket Entry 10 at 4-14.) The ALJ's step four finding can permissibly rest on a finding that Plaintiff can return to a single, former job, so long as that job qualifies as "past relevant work." 20 C.F.R. § 404.1560(b)(3) (providing that, if a claimant can do any of his or her past relevant work, he or she does not qualify as disabled); 20 C.F.R. § 404.1560(b)(1) (defining "past relevant work" as work done within

the last 15 years that lasted long enough to learn how to do it and that amounted to substantial gainful activity).[9]

In conclusion, Plaintiff has not shown prejudicial error arising out of the ALJ's improper finding that he can return to his past relevant work as an estimator. See generally Morgan v. Barnhart, 142 F. App'x 716, 723 n.6 (4th Cir. 2005) (applying harmless error standard in Social Security appeal); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.").

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 9, 2016

---

[9] Plaintiff does not contest that his deli counter/sandwich maker job qualified as "past relevant work." (See Docket Entry 10 at 13-14.)

21